GULF, C. & S. F. RY. CO. et al. v. CHAPPEL et al. (No. 318.)

(Court of Civil Appeals of Texas. Beaumont. March 4, 1918. Rehearing Denied March 20, 1918.)

NEGLIGENCE  ⚿➟39—TURNTABLES—WARNING CHILDREN.

Where child was injured playing on a turntable, the action of a towerman, near by, in speaking generally to the children on the turntable, telling them they might get hurt, did not relieve the railroad company from liability, where he could have gone down from his tower and removed the children with no injury to the operation of the railroad, except that a passenger train would have been delayed until he had returned to his post and permitted it to pass.

Appeal from District Court, Milam County; J. C. Scott, Judge.

Action by Frank Chappel against the Gulf, Colorado & Santa Fé Railway Company and others and action by Clara Chappel against the same defendants were consolidated. From judgment for plaintiffs, defendants appeal. Affirmed.

Rehearing denied 202 S. W. 366.

T. J. & C. T. Duff, of Beaumont, and Terry, Cavin & Mills, of Galveston, for appellants. A. J. Lewis and W. A. Morrison, both of Cameron, for appellees.

KING, J. On the 4th day of April, 1916, Frank Chappel filed a suit in the district court of Milam county against the Gulf, Colorado & Santa Fé Railway Company, and San Antonio & Aransas Pass Railway Company, for damages to him on account of the value of the services of his minor child being diminished by reason of injuries sustained by her, and for the reasonable value of services by physicians and surgeons in charge of said child; and on the same day he, as next friend of his minor child, filed a suit against the same defendants for damages resulting to the minor child for the same alleged injuries. By agreement of counsel, the two cases were consolidated and tried by the judge without a jury as one case. The cause of action of each plaintiff is based upon the same state of facts, in so far as negligence is concerned. The appellee, Clara Chappel, then a girl about 8 years of age, was, on the 25th day of December, 1915, seriously injured while playing upon a turntable owned jointly by appellants, and operated in the town of Cameron, a city of some 5,000 inhabitants, for the purpose of turning their locomotives, and while playing upon the ponderous machine, she fell, and was caught beneath the same, and suffered very painful and permanent injuries. The allegations in the petition as to negligence on the part of appellants in maintaining said turntable, without it being closed or locked,

and as to the tender years and indiscretion of the appellee, Clara Chappel, and as to the alluring nature of the turntable to children of tender years to play thereon, and as to the invitation to them on account thereof, are substantially as set out in plaintiff's petition in the case of Railway Co. v. Morgan, 92 Tex. 100, 46 S. W. 28, with the additional allegations set out in plaintiff's petition in said Company v. Morgan, 24 Tex. Civ. App. 58, 58 S. W. 544, and we therefore deem it unnecessary to more than refer to these petitions. A trial before the court, without a jury, resulted in a verdict in favor of appellee, Clara Chappel, in the sum of $4,000, and in favor of her father in the sum of $1,000, which includes $560 for doctor bills and medical attention, and $440 for the diminished value of the services of said Clara Chappel to him during her minority. From this judgment, by agreement, this joint appeal has been perfected.

The trial court, in his findings of fact, found that the turntable weighed approximately 10 tons, and that when it was revolved, it was a dangerous instrument to leave unfastened and exposed to the visits of children of immature judgment and discretion; that the appellee, Clara Chappel, was about 8 years of age, and was about, or possibly a little more than, the average of intelligence of children of her age, but that she was incapable of realizing or comprehending or appreciating the danger to her of playing upon said turntable; that for at least 15 years the children of the town and vicinity had been in the habit of playing on said turntable, and that at least on two former occasions each of two boys had sustained injuries in playing on said turntable, and that the servants and employés of said defendants knew that it was the custom of children to play thereon; that appellee, Clara Chappel, had on one occasion prior to the injury, but without the knowledge of her parents, played upon said turntable, and that the frequency and the long time during which children had been permitted to play on the same justified the belief that the defendants invited children there to play; that on the 25th day of December, 1915, the appellee, Clara Chappel, and several small children went to play on said turntable, and while they were playing on the same, and revolving it as a hobby horse, or merry-go-round, one of the employés of appellants, who was in charge of and operating the tower near the turntable, actually saw the children, and that said employé actually saw said children playing thereon, and saw they were in danger, and that he made no effort, further than to speak to them in an effort to remove them therefrom, and that said employé actually saw them, and actually saw the danger to which they subjected themselves in playing thereon; that from the manner in which said turntable was constructed, in a public place, and the manner in which and the length of time chil-

dren were allowed to play thereon, appellants impliedly invited them on the same to play, and that appellee was so invited at the time she received the injury of which complaint is made in the petition; that on account of the character of the turntable, and because it was so attractive to children of immature judgment, and had been so long used and used so much by them, with the knowledge of employés of said appellants, that they were guilty of negligence in failing to keep same safely locked or guarded or fenced, or protected in some way, so that appellee would not be enticed thereon to play; that on account of the age and immature judgment of appellee, she did not know it was dangerous to play on the turntable, and that she was not guilty of contributory negligence; that the father did not know, before said child was injured, that she had ever played thereon, and that he was not guilty of contributory negligence; that the appellee will never recover from said injuries, and that from horrible laceration, enormous scars were left on her body by reason of such injuries, so that she will incur mental suffering as well as physical pain in the future, and that $4,000 was a reasonable compensation for the damages and injuries received; that from the long and continued use of said turntable by the children of the town as a place of play and amusement, and the publicity of same, and the fact that the defendants, through their servants, actually knew of such use of the same before the accident in question, amounted, in fact, to an implied invitation on the part of said appellants to children generally and plaintiff in particular to use said turntable as a place of play, and amusement, and imposed the duty upon each of the appellants to exercise ordinary care to safely lock or guard the same, or to inclose it in such manner that young and inexperienced children, like the appellee, could not have gained access to such ponderous, attractive, and dangerous machine, to gratify their childish propensities for amusement, and that the appellants were alike guilty of culpable negligence in failing so to do, and that such negligence was the direct and proximate cause of the injuries to appellee.

In his conclusions of law, the court found, from the foregoing facts, that the appellants were jointly liable to the appellee for the injury received, because such injuries were the direct and proximate result of negligence of said appellants, as pointed out in the findings of fact.

Similar findings of fact were made as to the cause made by the father as to the negligence of appellants, with the further findings as to doctor bills and the value of the diminished services of the appellee, Clara Chappel, to him by reason of the injuries.

Neither by any assignment of error in this court, nor by anything in the motion for new trial in the trial court, did either of ap-

pellants assail the petition as not stating a cause of action, nor have they assailed any findings of fact by the trial court, nor is the judgment complained of as being excessive. We, therefore, have a case where the petition states a cause of action, where the case is tried before the trial court, without a jury, where the findings of fact by the trial court show that the plaintiff was not guilty of contributory negligence, and that each of the appellants was guilty of culpable negligence, and that this negligence was the proximate cause of the injury.

Appellants' assignments of error Nos. 1, 2, 3, and 5, in effect, attack the turntable doctrine. It would be threshing over old straw to repeat here this doctrine, which seems to be well established. and to have had its origin in 1871, when the Supreme Court of the United States, in Railway Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, announced the doctrine that it was a question of fact for a jury to determine whether or not the railway company would be liable for damages upon the implied invitation of the company to children to use the turntable as a place of amusement. It appears that the turntable question first came before the Supreme Court of Texas about 10 years after the decision in the Stout Case, and Judge Stayten, in Evansich v. Railway Co., 57 Tex. 126, held that:

"The fact that the turntable was upon the premises of the appellant does not affect the question, nor relieve it from the duty of exercising in reference thereto such care as will render it not a dangerous machine to children who are attracted to it for amusement."

The turntable doctrine, in 1894, was again exhaustively reviewed and discussed by the Supreme Court of the United States in Railway Company v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434, and the doctrine in the Stout Case was unanimously reaffirmed by that great court, and so far as we have been able to find, there has been no departure therefrom. Furthermore, from our investigation, the courts of Texas have always adhered and still adhere to the rule as announced in the Stout Case. H. & T. C. Ry. Co. v. Simpson, 60 Tex. 103; Railway Co. v. McWhirter, 77 Tex. 360, 14 S. W. 26, 19 Am. St. Rep. 755; Railway Co. v. Robertson (Sup.) 16 S. W. 1093; Railway Co. v. Morgan, 24 Tex. Civ. App. 58, 58 S. W. 544. See, also, Railway Co. v. Styron, 66 Tex. 421, 1 S. W. 161; Railway Co. v. Harlan, 39 Tex. Civ. App. 427, 87 S. W. 732; Railway Co. v. Voss, 159 S. W. 64.

Furthermore, the doctrine laid down in the Stout Case has been followed by the highest courts in a great majority of the other states of the union. There are rare exceptions in other states sought to be maintained upon the less humane doctrine of the common law, established at a time when human progress had not yet developed those ponderous, dangerous, and attractive machines by which so much injury and death

has been inflicted upon the children of the land, and is not of the character that is very persuasive or convincing when weighed by the side of enlightened views of the great courts in the cases where the doctrine is enforced.

The fourth assignment of error is as follows:

"The evidence in this case shows that just prior to the accident, the child was warned to go away from the turntable. This appearing, the defendants were under no obligation or duty to do more in the premises to avert injury to the child. The employés were not obligated, as a matter of law or fact, to neglect the duties for which they were employed. and retard the business of defendants, or use force or quasi force to prevent this child from injuring herself merely because she was in a position on the private property of the defendants, uninvited, from which injury could result."

This assignment assumes that the child was on the turntable uninvited, while the trial court found that she was there by the implied invitation of appellants. It is true that the court found, in his findings of fact, that the man in the tower, operating the switch devices at the junction of appellants' roads, a few minutes before the injury saw appellee riding the turntable in question, in company with other children, and spoke to them in an effort to remove them therefrom. The evidence discloses that the towerman did not have charge of the turntable. Appellants, on the one hand, contend that notice to him that children often played upon said turntable was not notice to the officers and employés of appellants, in the sense that they would be held to knowledge of the use to which children frequently put the turntable; on the other hand, they claim he had the authority to withdraw the invitation to the children, and did withdraw the invitation, by speaking to them in an effort to get them to get off the turntable. His action did not relieve the railroad companies in the premises. Appellants undertake to bring this case under the rule announced in North Texas Construction Co. v. Bostic, 98 Tex. 239, 83 S. W. 12. In that case plaintiff was a boy 8 years of age, was injured in a ginhouse, and it was admitted that he was warned by one of defendant's employés, but the evidence as to the character of the warning was conflicting. It was held that a request to charge the jury that if plaintiff had been ejected from the ginhouse shortly before he was injured, and warned that the ginhouse was dangerous, and that he could not remain there, and thereafter, without defendant's consent, or so suddenly that defendant's employés did not have time to prevent it, plaintiff re-entered the ginhouse and got his hand in the saws by getting too near them, he could not recover, should have been given.

It is admitted and found by the court as a fact that the witness, John Chandler, in charge of the towerhouse and within a few

feet of the turntable, actually saw and realized the perilous position of appellant, and that he made no effort to prevent the injury to appellant, except to speak to the children generally, telling them that they might get hurt, and accepting appellants' theory that he had authority to warn and eject the children from their perilous position, his action, according to our conception of law and morals, falls far short of his duty to them. He attempts to excuse himself for not going down and removing the children by the fact that there was an approaching passenger train just over the hill, and that it could not pass the crossing until he gave the signal. Therefore, from his own statements, had he gone down from his tower and removed the children, no injury or inconvenience to the operation of the passenger train would have been occasioned, except that it would have stood still until he removed the children and returned to the tower and permitted it to pass. As said by Judge Hodges, in Little v. James McCord Co., 151 S. W. 837:

"Human life and personal safety are the most important objects of governmental protection, and the policy of imposing civil liability upon those whose carelessness or indifference may cause the loss of either is one of the most effective means of inspiring a proper degree of diligence to avoid injuries or fatal accidents resulting from exposure to dangerous agencies and hazardous situations."

The sixth and last assignment of error asserts:

"The fact, if it was a fact, that other children had played on the turntable, and that other persons in the service of the railway company had seen children playing on the turntable, did not and could not establish liability here, especially in the absence of evidence that any officer or employé of the defendant company having charge of said turntable or with authority to act relative thereto were shown to have been cognizant of such use of the turntable by uninvited persons."

The court's findings of fact dispose of this assignment against appellants. It appearing that there is no merit in this appeal, and that justice has been done, the cause is affirmed.