HENRY v. MISSISSIPPI POWER & LIGHT CO.

(Division B.  March 27, 1933.  Suggestion of Error Overruled May 8, 1933.)

[146 So. 857.  No. 30455.]

Maynard, FitzGerald & Venable, of Clarksdale, for appellant.

830

Green, Green & Jackson, and **A. M. Nelson,** all of Jackson, of counsel for appellee; **Edward W. Smith,** of Clarksdale, and **Sillers & Roberts,** of Rosedale, for appellee.

832

834

Argued orally by **George F. Maynard, Jr.**, for appellant, and by **Walter Sillers, Jr.**, and **W. E. Smith**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

The appellee maintained near the town of Crenshaw a high-power electric transformer station, which station was in the immediate charge of A. A. West. Appellant's decedent was a boy about thirteen years old, was of average intelligence, was obedient and well-behaved, and was the grandson of the said A. A. West. During the week of August 2, 1931, the said child was on a week's visit to his said grandfather, and urged his grandfather to allow him to go within the inclosure of said transformer station and to spend the greater part of the time with his grandfather therein. This was acceded to by the grandfather, and from Tuesday until Saturday, when the child was killed, the grandson spent each day within the said inclosure with the permission as aforesaid of the grandfather.

But the grandfather cautioned the lad that the equipment within said station inclosure was highly dangerous, and he was ordered by his grandfather not to touch any of said machinery or equipment. The grandfather further testified that he thought it was entirely safe to permit the boy within the inclosure, because he supposed the boy fully understood the dangerous nature of the said transformer station, and, because of the obedient nature of the child, the grandfather did not anticipate that the child would in any way disobey him. It was part of

the duties of the said grandfather as caretaker of said transformer station to read the meter at eight o'clock on each morning. On Saturday morning, when this hour arrived, the grandfather and the child were engaged in tending a bed of zinnias within the inclosure, and the grandfather went to read the meter, telling the child to remain where he was. In order to read the meter, it was necessary for the grandfather to insert his head within a box-like contrivance, during which time he, of course, could not see or keep watch upon the child. In a few moments after the grandfather had entered upon this task of reading the meter, there was an unusual noise or loud report, and it was then found that the boy had climbed upon a concrete block three feet high, and evidently had attempted to stand erect thereon, which brought his head within reach of an uninsulated wire carrying thirteen thousand volts, and that this wire had cut into the boy's head from the top of the head even to the mouth, and had destroyed the skull and some of the teeth, resulting, of course, in the immediate death of the child. Upon these facts a peremptory instruction was granted to the power company, and the administrator has appealed.

We think a peremptory instruction for the power company was erroneous, and, as a primary basis for our conclusion, we would refer to the fact that it is the settled law in this state that public utility corporations in handling and controlling the subtle and extremely dangerous agency of electricity shall be held to the highest degree of care which skill and foresight applicable to that business can obtain. Temple v. McComb City Electric Light & Power Co., 89 Miss. 1, 42 So. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698, 10 Ann. Cas. 924; Potera v. Brookhaven, 95 Miss. 774, 49 So. 617; Cumberland Telephone & Telegraph Co. v. Cosnahan, 105 Miss. 615, 62 So. 824; 20 C. J., p. 343. From this it follows, or rather runs concurrently with the general principle stated, that

one who possesses or manages a dangerous article or agency such as electricity, explosives, and the like, must use the same degree of care and caution in guarding third persons against danger in respect to said articles or agencies so far as the said danger is not too remote, according to the usual experiences of mankind. 45 C. J. p. 845 et seq.

It was in obedience to this duty that the appellee power company fenced the said high-power electric substation in such a substantial manner that it would serve to exclude therefrom all persons except those who were entitled to enter therein, or those who by force and violence intruded. And thus again it follows that the keeper, Mr. West, was not within the proper exercise of any duty or authority when he admitted this child within this inclosure, within which were the dangerous appliances mentioned, nor was he acting in the exercise of any lawful discretion. On the contrary, since it was the duty of the utilities company to substantially fence this station and keep it locked or guarded against the admission therein of any except the company's expert employees or those who had an actual and definite business with the company to accomplish which it was reasonably necessary to admit them, it must follow, as a logical sequence, that it was the duty of the caretaker to exclude all others, including the decedent, and that his duty comes within the list of those which are denominated as nondelegable. This principle is established in this state by the case of Barmore v. Railway Co., 85 Miss. 426, 448, 449, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594. See, also, 6 La Batt, Master and Servant (2 Ed.), section 2503.

The caretaker and employee, A. A. West, being in this respect the company itself, was therefore guilty of active negligence in admitting the child within the inclosure; and, although he told the child not to touch any of the machinery or appliances therein, this is not sufficient, if under proper instructions the jury should find

that the said outfit comes within what is known as an attractive nuisance to a boy of the age of the decedent. These warnings or admonitions are not sufficient in respect to what are termed attractive and alluring nuisances as regards children of that age when the impulses of curiosity and adventure so strongly weigh in the control of their conduct. See, for instance, Callahan v. Eel River & E. R. Co., 92 Cal. 89, 92, 28 Pac. 104; Gulf, C. & S. F. R. Co. v. Chappel (Tex. Civ. App.), 201 S. W. 1037, 1039, 1040. At the same time, the child in this case may have been, although very young in age, of sufficient intelligence and specific understanding to have imputed to him the guilt of contributory negligence.

The judgment is therefore reversed, with directions to retry the case along the lines set forth in the last paragraph of this opinion, under proper instructions to the jury.

Reversed and remanded.