FARMERS GIN CO., INC., *v.* LEACH.

(Division B.   June 7, 1937.   Suggestion of Error Overruled July 1, 1937.)

[174 So. 566.   No. 32798.]

**Watkins & Eager,** of Jackson, **Powell & Powell** and **Ray & Spivey,** all of Canton, for appellant.

Barbour & Henry, of Yazoo City, and White & McCool, of Canton, for appellee.

Argued orally by **Pat Eager**, for appellant, and by **Jeptha Barbour**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellant, on the occasion in question, was operating a public gin in the town of Canton, and for its motive power used an electric motor and an electric current of 2300 volts. Appellee's decedent was a farmer and a patron of appellant's gin. He had brought to the gin a bale of seed cotton, which was being unloaded. Suddenly the machinery was shut down, which was done

because it was discovered by the foreman of the mechanical operations that the electric motor was smoking. According to the undisputed evidence, when an electric motor of the size and character of the one here under consideration is found to be smoking, it indicates that something has happened which has allowed the electric current to escape into all parts of the motor, and, in consequence, into every conductor which is in contact with any part of it. As a matter of fact, it was subsequently discovered that the trouble in this case was that one of the bearings had burned, and to such an extent as to allow the armature to drag upon the field coil.

An electrician was immediately sent for, and upon his arrival the foreman aforesaid invited appellee's decedent, and others there present, to go to the place where the motor was housed, apparently with the thought that the electrician might need aid. The motor was housed in an inclosure about six feet square, this housing being of planking for a height of about four feet, and above that was a netting of wire screen. Pending the arrival of the electrician, the foreman had partially detached the top part of the wire screen on the south side of the housing and rolled it down in such a way that part of it was brought within about six inches of actual contact with the motor.

The first thing that was done was to remove the belt from the motor in which appellee's decedent participated; and it appears that thereafter appellee's decedent went to the south side of the housing on the outside thereof and was either leaning against the wire screening or was within a few inches thereof. While appellee's decedent was in this position, the electrician gave a signal to turn on the current, which was done, and immediately there was an intense flash, and by reason of the arcing or jumping of the electric current from the motor to the wire screen and thence into and through

the body of appellee's decedent, whose feet were on the ground, he was electrocuted and expired in about fifteen minutes.

In Henry v. Mississippi P. & L. Co., 166 Miss. 827, 835, 146 So. 857, it was said: "It is the settled law in this state that public utility corporations in handling and controlling the subtle and extremely dangerous agency of electricity shall be held to the highest degree of care which skill and foresight applicable to that business can obtain," citing cases. "From this it follows, or rather runs concurrently with the general principle stated, that one who possesses or manages a dangerous article or agency, such as electricity, explosives, and the like, must use the same degree of care and caution in guarding third persons against danger in respect to said articles or agencies so far as the said danger is not too remote, according to the usual experiences of mankind."

The larger part of the briefs of the parties is occupied by discussions whether appellee's decedent was an invitee, a licensee, or a trespasser. In our opinion the point is immaterial in this case; for it is admitted that appellant's servants knew he was there, wherefore they were under the duty either to exclude him from the dangerous premises, or else to warn him against the danger of standing or being near enough to any of the conductors of this escaping high voltage to injure him by arcing or jumping. It was an unknown danger to him; he is shown by the positive testimony to have been entirely ignorant of high voltage electricity, and it is doubtful if one person in ten has ever heard of arcing or the jumping of a high tension electric current from object to object, such as occurred here. And thus we have but to apply the elementary principle of modern jurisprudence that "everywhere the sacredness of life and limb is the declared basis upon which the law imposes a duty of care."

Affirmed.