MISSISSIPPI POWER & LIGHT CO. *v.* GOOSBY.

(Division B.  Dec. 11, 1939.)

[192 So. 453.  No. 33893.]

Johnson & Allen, of Indianola, and **A. M. Nelson** and **Green, Green & Jackson,** all of Jackson, for appellant.

Cooper & Thomas, of Indianola, for appellee.

Argued orally by **Marcellus Green,** for the appellant.

**McGowen, J.,** delivered the opinion of the court.

Anna Goosby, the appellee, sued the Mississippi Power & Light Company, the appellant, for damages sustained by her because of the destruction of her house by fire,

alleging negligence on the part of the appellant in the construction and maintenance of its wires charged with electricity erected over and across the roof of her house. The only plea of the appellant to the declaration was the general issue. The verdict of the jury was for $350.

The declaration was amended so as to sue for the value of a pecan tree in her yard destroyed by the fire.

On Christmas night, of 1938, about ten o'clock, the home of Anna Goosby was destroyed by fire. It was a frame structure, covered with boards, the roofs thereof running up in a V shape. The house destroyed was on a lot at the corner of Elm and Washington Streets, facing north, and on the east there was a chimney. She had lived there about thirty years and she claimed she was ninety-seven or ninety-eight years of age.

Instead of running the wires to the intersection of Elm and Washington Streets, the appellant had run the wires so as to cut across her lot. There were nine of these wires. They were old, had been there a long time; some of them were insulated, and some were not. The insulation was ragged, and the evidence of Anna tended to show that some of these wires dragged the comb of the roof of the house. When the wind blew the wires sagged and swayed. The sag in the wires was immediately over the roof of the house. Five of the wires were attached to a crossarm. Four were attached to a pole twenty-seven feet above the ground below the crossarm and about eight inches apart, one wire over the other. The wires ran to either side of or over the chimney; all except one was charged with electricity, and when the wind blew some of the wires would touch the chimney and the house. On this occasion it was drizzly, misting rain, and the wind was blowing.

Some of these wires had a voltage of 2300, others as high as 3000 volts. One had a voltage of 500 up to 3000 volts. There was a combination circuit carrying 220 volts. The fuse box was located on the south pole on Elm Street. The fuses were for the wires carrying low

current. There were no fuses on the heavy current or high voltage wires. Only two fuses blew out at the time of this fire.

This house consisted of one room and a shed, with a porch on the front of the living room. The old negro lived in what she called the kitchen close to the house, but not attached thereto. She had tenants, Charlie King and Carrie Eccles, occupying the room. At the time of the fire they were asleep. Their testimony tends to show that when they were awakened the fire was coming from the roof, and did not originate in the room. There was a crack between the wall and the chimney. When the fire was first discovered it was on the roof near the chimney, about the size of a washtub or ten gallon jug with a bluish-red flame, and there were flashes emitting along the roof of the house in proximity to the comb thereof. Some members of the fire department testified that as the wires burned and fell to the ground, they were emitting flashes of electricity, and they considered it dangerous to undertake to throw water on the house. No electric wires were installed connecting the house with electricity. There had been no fire in the house and no cooking done on that day, and the last fire used was for cooking supper on Christmas Eve night.

It was shown in evidence by an expert that if two wires of low voltage came together, they would form an arc, but, in the opinion of the witness, would not set fire to the house. A part of the wall on the east side near the chimney did not burn, neither did the floor. It was shown that water, as a conductor of electricity, contacted with high voltage wires would cause an arc between the two wires and create flames.

The evidence for the appellant tended to show that the fire originated on the interior of the house and burned upward: that insulation was no longer necessary in order to carry safely electricity; that some of the wires were covered with a rubber composition which was for the preservation of the wire; that when an arc was formed

between two wires the fuse boxes would blow out and thereby withdraw the current. Witnesses for the appellant testified that the wires were installed over the house and attached to the pole, varying from four to ten feet; that there was necessarily some sag in the wire in order to allow for expansion and contraction due to heat or cold; that this sag developed when the wires were first suspended. There were contradictions of the witnesses as usual in this class of cases.

The appellee, Anna Goosby, among other things, testified that she was awakened and carried from her room, did not know about the origin of the fire, but there had been no fire in the building. She testified in effect that the wires had been placed over her house by the appellant, without her consent, and had been there for years. She was afraid of the wires, had seen, on another occasion when a wire dropped, a tree burned in her yard, and on another occasion when a broken wire dropped in a puddle of water, she was warned not to approach it or she would be killed. She knew that one of the sagging wires rubbed against the chimney.

From this statement of the facts it will be seen that there was a sharp dispute as to whether the fire originated in the interior or on the roof of the house. There was sharp dispute as to the distance apart of the wires, and as to the height of the wires from the comb of the roof of the house, and there may be a dispute as to the effect of electricity conveyed by two wires which come in contact with each other and cause a short circuit. There is no dispute that after the wires had burned in two and dropped to the ground, electricity was being discharged therefrom. No witness undertook to say which of the wires was charged with high or low voltage.

To summarize the facts as viewed from the standpoint of the plaintiff's evidence, we may conclude that there were no electric wires on the interior of the house; there had been no fire for more than twenty-four hours within the house; and there was no fire in the fireplace. The

roof was wet, which made it a good conductor of electricity. There was no evidence of a storm or lightning from the elements. Witnesses testified that the blaze was first seen on the roof and near where other witnesses claimed the wire sagged so as to touch the comb of the roof. Contact of high powered uninsulated wires in combination with a wet roof would probably cause a fire.

The principal assignment of error in this case on the part of the Mississippi Power & Light Company is that the court erred in refusing it a peremptory instruction for two reasons: the evidence did not establish that probably the fire was set out by the electric wires of the appellant, and the evidence of Anna Goosby shows that she assumed the risk. Appellant's theory is that under physical laws it is shown in this record that the fire could not have been caused by the discharge of electrical current, and that the fire evidently originated in the interior of the house.

In the summary of the facts we think that the evidence offered on behalf of the appellee was sufficient to overcome presumption of fact that the fire originated in the interior of the house. There was sharp conflict on this question. The conflict was for the jury. The jury evidently believed the evidence of the appellee and of the appellee's witnesses. See Romano v. Vicksburg Ry. & Light Co. (Miss.), 39 So. 781; and Gulf, M. & N. R. Co. v. Sumrall, 142 Miss. 56, 107 So. 281; and Vicksburg Ry. & Light Co. v. Miles, 88 Miss. 204, 40 So. 748.

The case at bar may be said to be a case of circumstantial evidence as to the origin of the fire at the moment, but we think the facts we have detailed are stronger against a peremptory instruction than either of the cases we have cited, supra; and the fact that the fuses did not blow out indicates that on a wet roof the electrical current was caused by the sagging of the wires coming into contact with each other and with the roof, and friction producing an arc which caused the fire. Those who deal in, and undertake to convey over wires,

electrical current are charged with a high degree of care in this state. They must use that care which would be commensurate with the danger. See Mississippi Power Co. v. Thomas, 162 Miss. 734, 140 So. 227; Cumberland Telephone & Telegraph Co. v. Cosnahan, 105 Miss. 615, 62 So. 824.

If the evidence, which the jury evidently believed, is true that these wires charged with very high voltage of electricity were permitted to sag, and placed in as close proximity as detailed by the witnesses, and the insulation thereon was allowed to become ragged, and they were not insulated, and the fuse boxes did not blow out, then the jury were warranted in the conclusion that the fire had originated on a wet roof by this electrical current. The jury were warranted in finding that the appellant had negligently allowed the wires to be constructed too close together, and had negligently maintained them by allowing them, when the wind was blowing, to drag the comb of the roof of the house. Taking the whole evidence of the appellee, we doubt if the placement of the wires, as indicated by her witnesses, could be justified by any electrical building code in use in this country. It has been thought that insulation was necessary to prevent the escape of the electricity if it came in contact with any materials which would conduct it from the wire, and if, as testified by some of the witnesses for appellant, insulation was no longer necessary, then the fuse boxes evidently did not function in this case.

The discharge of a blaze on the ground, which is undisputed, is some evidence that there was no arrest of the current by the burning of the wires when they fell to the ground. We think these facts are sufficient for the jury to find that the fire originated from the electrical currents, and if it did, there was ample evidence to support the negligence charged.

It is next insisted that by the evidence which we have set forth, the appellee, Anna Goosby, assumed the risk, and that the doctrine of assumption of risk applies to

property as well as to individuals, and cites the case of McDonald v. Wilmut Gas & Oil Co., 180 Miss. 350, 176 So. 395. This court held in that case where the owner of an ox turned the animal into a pasture where he knew there was an open ditch that the owner of the animal assumed the risk of the injury to the animal falling or getting into the open ditch, and could blame only himself, and further held that the common law doctrine of assumption of risk is in full force in this State, except as between master and servant. In addition to this authority and the authorities therein cited, appellant relies altogether upon cases arising where the relationship of master and servant or employer and employee exists, which we do not think are in point here. Appellant in the court below did not plead as an affirmative defense that the owner assumed the risk incident to the negligent construction and maintenance of the wires over her house. In the next place, the evidence was not developed as to the relationship which existed between the appellant and appellee in this case. It is true that where it clearly appears from the evidence of the plaintiff that he assumed the risk and knew thereof, then although there is no plea on behalf of the defendant he may take advantage of it. In the case at bar appellant in its motion for a peremptory instruction was very specific and did not intimate assumption of risk as a defense. The court below never dreamed that the question of assumption of risks was involved in this case.

For aught we know the appellee may have pending a suit against the Power Company on account of the construction of these wires, and in an effort to have them removed or corrected. We are afforded the substance of all the evidence upon which the appellant relies. If we should hold in this case that the doctrine of assumption of risk as to the owner of the property here would be applied, we would have to do so in the absence of any evidence as to her knowledge of the effect produced by electricity coming in contact with other objects. We

think the evidence shows that she knew nothing about electricity. We are certain she is not shown to have any knowledge of the science and the physical laws upon which electricity is used, controlled, and guarded against.

This old negro woman, ninety-seven years old, was afraid of the electricity. She saw it burn a bush, and was told that she would be killed if she touched a live wire in the water. What did she know about fuses, insulation, conductivity, kilowatts or volts? In the absence of further proof of her knowledge we think it does not appear that she assumed the risk incident to the negligence of the appellant, as found by the jury, in the manner in which it placed its wires over her house, and especially in the manner which they were being maintained at or about the time the house was destroyed by fire. It would stagger human credulity to believe that she understood the physical laws of electricity, and knew the danger incident to the construction of the wires across her place. There was no effort to prove or to test her knowledge. The fact that she was afraid of electricity and electric wires, and had seen a wire, which had been broken and had fallen down, discharge electricity, does not impute to her knowledge that the friction of bare wires upon a combustible substance will convey electricity if the voltage is high enough to be destructive of that with which it comes in contact.

The assignments of error as to the instructions we think are without merit in this case. When considered piece-meal it is true that every element involved in this lawsuit was not brought forward, but when they are considered together they fairly state the law of the case.

We find no reversible error in this case.

Affirmed.