ROBERTS *et al. v.* MISSISSIPPI POWER & LIGHT Co. *et al.*

(Division B.   Nov. 23, 1942.)

[10 So. (2d) 542.   No. 35134.]

**Currie & Currie**, of Hattiesburg, and **R. C. Russell**, of Magee, for appellants.

630

A. M. Nelson and Jackson, Young & Friend, all of Jackson, J. B. Sykes, of Mendenhall, and Patterson & Patterson, of Monticello, for appellees.

Argued orally by **N. T. Currie** and **R. C. Russell**, for appellants.

**Alexander, J.**, delivered the opinion of the court.

Plaintiffs brought suit for damages arising from the death of Jack Roberts, a member of their family, who

it is alleged was electrocuted when a long drilling auger which he was using came in contact with a highly charged power line maintained by the defendant company. At the conclusion of plaintiffs' testimony, a motion to exclude the evidence was sustained and judgment was entered for the defendants.

Plaintiffs' decedent was employed by the State Highway Department through one Patterson and was working under his orders and supervision at the time of his injury and death. The duties assigned to the deceased consisted of making certain soil tests by the use of a drilling auger whereby sample cores could be procured revealing the nature of the subsoil along a proposed highway route. This drilling auger was so constructed as to be manually employed and permitted extension in length by the addition of extra sections or joints of about three feet in length. Deceased was placed at this work with three other young men in a cultivated field and at a point on the right-of-way of the electric company almost but not exactly beneath an uninsulated power line of high voltage. At this point the wire was about 13½ feet from the ground. Although the metal auger was built up by sections as the depth of the hole progressed, it was removed without being disjointed. At the time of the fatal injury, the hole had reached a depth of about 14 or 15 feet and when the auger was removed from the hole it was allowed to extend upward its full length, when it swayed or fell over onto the electric wire and received and conducted the voltage of its current to those operating it, resulting in the death of the said Jack Roberts.

The appeal presents the legal question whether, conceding the facts to be as outlined by plaintiffs' case, the defendants could be held to have violated a legal duty owing to deceased. Although the degree of care has been often said to vary with the degree of danger inherent in an instrumentality, a comprehensive definition of requisite care is ''that degree of care commensurate with

appreciable danger appraised in terms of ordinary prudence and interpreted in the light of the attendant circumstances,'' Supreme Instruments Corp. v. Lehr, 190 Miss. 600, 627, 199 So. 294, 1 So. (2d) 242, 245. The measure of prudence which is an element of the definition must in turn involve reasonable probabilities according to normal human experience. Such probability in turn involves not an absolute prescience but a degree of foreseeability which consists with normal experience and observation and which should equip the party sought to be charged with a prudence that envisages harm as a reasonable likelihood. Time, place and circumstances must be taken into account. Here, the place was that part of an open cultivated field which had been designated and used as a right of way for the stringing of the wires of the power company. It was in duty bound to use requisite care to see that its wires should not come in contact with and damage any person or property reasonably likely to be exposed thereto along its right of way. If it is to be held negligent with respect to plaintiffs' decedent, it must be held to have foreseen as a reasonable probability the engagement of deceased in some activity which would bring him in contact with its wire. Such presaged activity must of necessity have involved an actual spanning of the intervening height of 13½ feet by both human and mechanical means whereby the deadly current could be conducted from the wire to the ground. While the case involves the highly dangerous medium of high voltage current, its danger consists solely in the probability of actual contact and the degree of care requisite in its maintenance is such as reasonably guards against contacts which according to human knowledge and experience are likely to occur. This test was applied in Burch v. Southern Bell Tel. & Tel. Co., 178 Miss. 407, 173 So. 300, 302, where plaintiff was injured when he was caught by a telephone wire while riding on top of a load of hay stacked on a truck. This court held: ''Telephone

and telegraph lines crossing a highway must be high enough for the usual and ordinary travel in that area, including the usual and ordinary commercial uses of the highways, but they are not required on pain of liability to be high enough for extraordinary travel, as to which the traveler must keep a lookout. 62 C. J., p. 59. . . . But the roadway here in question was not a public thoroughfare but was a private way, and the owner of the premises was not required to anticipate and provide for that full extent of height required of a general public highway.'' Although this case does involve a high voltage wire, the requirement of contact to produce injury is present and the test of reasonable foreseeability equally applies.

However, there are many other cases in point dealing with electric wires. In Borgnis v. California-Oregon Power Co., 84 Cal. 465, 258 P. 394, plaintiff was injured when a fishing rod which he carried came in contact with an uninsulated electric wire which had been allowed to sag within reach of such rod. Almost identical facts are present in Hafey v. Turners Falls Power & El. Co., 240 Mass. 155, 133 N. E. 107, and in Kesterson v. California-Oregon Power Co., 114 Or. 22, 228 P. 1092, lumber was stacked near a sagging power line and burned when the wire touched it. Other cases dealing with the nature and extent of responsibility for the maintenance of transmission wires are Griffis v. Village of Brady, 132 Neb. 498, 272 N. W. 306; American General Ins. Co. v. Southwestern Gas & El. Co., 5 Cir., 115 F. (2d) 706; Webb v. Louisiana Power and Light Co., La. App., 199 So. 451, 453. In each of these cases recovery was denied and an important element in applying the test of probability or foreseeability was the location of the sagging wires and the absence of a duty on the part of the electric company to anticipate an unusual use of the property or its use by trespassers. An apt illustration of an unusual use of property is furnished by Webb v. Louisiana Power &

Light Co., supra. Here, the owner of the land was killed when a pipe of some 30 feet in length was withdrawn from a well without being disconnected and made contact with a transmission line. In stating the legal principle which resulted in nonliability, the court adopted the language of 18 Am. Jur., Electricity, Sec. 97, as follows, ''That the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires is only reasonable.'' In applying the rule to the facts, the court said: ''Defendant could not have reasonably anticipated that decedent would withdraw from the ground connected well pipe of a length, here more than 30 feet, that would make contact with the transmission line. On the contrary, it could have reasonably expected that in the event of the pulling of the pipe from the well, a disassembling of it, joint by joint, would be the course pursued.'' This is an entirely distinct case from those like Mississippi Power & Light Co. v. Goosby, 187 Miss. 790, 192 So. 453, when a sagging wire made contact with plaintiff's house.

If it were not enough that the use to which the premises was put was unusual, especially with respect to the manner in which such use was conducted, nonforeseeability may be further predicated upon its use by those who were not invitees or patrons of the defendant company and therefore, as to it, bore the relation of trespassers or mere licensees. 2 Rest. Torts, Sec. 333(b).

Plaintiffs cite Code 1930, Secs. 1504, 4998, as authorizing plaintiffs' decedent, acting under orders of the State Highway Department, to go upon the land of the defendant company for the purpose of preliminary survey. Such statutes divest the intruder of the penalties and responsibilities of a trespasser by justifying his act but it does not give him any greater rights than belong to a licensee. The duty of the owner of the land to guard against injury in such cases is governed by the rules

638

applicable to trespassers. Milauskis v. Terminal R. Ass'n, 286 Ill. 547, 122 N. E. 78; Dunn v. Bomberger, 213 N. C. 172, 195 S. E. 364; Cooley on Torts, 4th Ed., Secs. 251, 440. It is unnecessary to cite authority to support the contention that an owner of land owes no duty to trespassers or licensees except to refrain from wilful or wanton injury. See Mississippi Digest, Negligence, key number 32, 33. There is no evidence that the defendant company knew of the presence of the decedent whose unfortunate death occurred shortly after he had begun work, and the case is therefore not governed by Farmers Gin Co. v. Leach, 178 Miss. 784, 174 So. 566. See 2 Rest. Torts, Sec. 345.

There was therefore no error in the judgment of the court as to the defendant power company. Nor was there error in directing judgment for the defendant Patterson. Crossett Lbr. Co. v. Land, 121 Miss. 834, 84 So. 15; Seifferman v. Leach, 161 Miss. 853, 138 So. 563; Dobbins v. Lookout Oil & Refining Co., 133 Miss. 248, 97 So. 546; Yazoo & Mississippi V. R. Co. v. Downs, 109 Miss. 140, 67 So. 962; American Heating & Plbg. Co. v. Keene, 5 Cir., 96 F. (2d) 170; cf. Lee v. Reynolds, 190 Miss. 692, 697, 1 So. (2d) 487, 489.

Affirmed.