214 Miss. 397 (1952)
57 So.2d 859
SOUTHERN PINE ELECTRIC POWER ASS'N.
v.
DENSON.
No. 38233.
Supreme Court of Mississippi.
March 24, 1952.
Butler, Snow & O'Mara, for appellant.
*402 O.M. Oates, McFarland & McFarland, Jas. D. Hester, and Melvin, Melvin, & Melvin, for appellee.
*405 Butler, Snow & O'Mara, for appellant.
*419 Lee, J.
This suit was brought against Southern Pine Electric Power Association by J.J. Denson, Administrator, to recover damages for the alleged wrongful death of E.J. Stringer. There was a verdict for the plaintiff for $15,000; and from the judgment entered thereon, the Power Association appeals.
While the declaration charged several grounds of negligence, proof was adduced only on the allegations that the Power Association was negligent in erecting and maintaining its power line, uninsulated and too close to the ground, almost directly over the decedent's water well.
E.J. Stringer and wife lived in a rural home in Jasper County. In June 1948 they executed a right-of-way easement over their property to the Power Association for the construction and maintenance of its power line, and they became patrons of the company. The primary line was 25 feet above the ground and carried 7620 volts. It ran across their backyard and lacked only 3 to 6 feet of being directly over their well  a bored well, with a bench 3 to 4 feet wide, 6 feet long and 2 or 2 1/2 feet high, built around it.
On Wednesday, about June 13, 1950, Stringer purchased an electric pump from one McAlpin, who installed it in the well. The next morning, Stringer sent word to McAlpin that the pump was not working, he was out of water, and requesting McAlpin to come and take it out. Needless to say, McAlpin did not remove the pump.
Early the following Sunday morning a neighbor, Melvin Ishee, went to the Stringer home where he found the *406 bodies in the yard, near the well. Mrs. Stringer was not burned badly and could be recognized easily; but Mr. Stringer was burned to a crisp, to such an extent that expert evidence was necessary to make a positive identification.
A coroner's inquest was immediately set up. Dr. W.C. Simmons made a detailed examination of the bodies and of the immediate premises. The body of E.J. Stringer was within 3 or 4 feet of the well. His wife's body was lying 4 or 5 feet on the other side. The well, bench and curbing were burned into the ground. The pump, consisting of zinc pipe about 1 inch in diameter and about 21 feet long, together with the point or strainer of the length of 5 feet had been removed from the well and the bottom part was near the well hole. There were several bright streaks near the top of the pipe. He observed the two power lines, both primary and secondary, almost directly over the well, only 3 to 6 feet off perpendicular from the bench or well hole. He testified that no ordinary fire could have so completely destroyed the bench and curbing or so nearly burned up a human being. He expressed the opinion that, beyond reasonable doubt, Stringer was electrocuted.
Several witnesses observed a spot on the primary wire which appeared to have been punched or melted or burned. One witness said that he was present when employees of the appellant lowered the wire. Referring to the spot, they said, "that is where it touched". These witnesses also testified that, at the time, there was no splice in or wrapping of the wire. Later and before and about the time of the trial, a splice or wrapping appeared on the wire at that particular spot. Several witnesses testified that there were streaks or dark marks or wire signs on the pipe near the top as though an electric torch had touched and left them or burned the top of the pipe.
Shelton Thomas, an engineer, testified that construction of power lines should be planned so that power can *407 be used for pumps, and that the location of the line with reference to the well should be taken into consideration.
Rod Holloway, an electrical contractor, was of the opinion that a high voltage line so close to the house did not conform to good construction; that it would not be good construction either to place a well so close to such a line, or to place a line so close to the well; that it was reasonably foreseeable that a patron would use an electric pump in the well; and that standard pipe, with 21 foot joints, would be used.
One witness testified that 65 to 70 percent of patrons put electric pumps in their wells. Another, that 75 percent do so. And still another, that "most patrons" install them. It was shown that most shallow wells in that area are over 20 feet deep; that standard pipe comes in 21 foot sections, and the points are 5 feet long; that pumps get out of order and have to be repaired; that it is not necessary to obtain the services of experts to pull pipes out of wells, because patrons can do such work themselves; and that, if power lines are over or near wells, when the pipes are pulled out or put in, contact is likely to be made with such lines.
Several witnesses for the Power Association testified that the construction was proper and in accordance with recognized standards, as used by others in that kind of work. They said it was impracticable to insulate the lines, though such could be done at great expense. Insulation is obviated by having the line at sufficient height; and that in their opinion the line was high enough over the well.
There was testimony also that the current could be turned off; and that Stringer's failure to request this constituted negligence. Evidence was also introduced to the effect that the splice or wrapped place in the wire was made when the line was originally installed.
B.J. Morse testified that, when the pump was being installed by McAlpin, assisted by Stringer, it almost came in contact with the power line. He himself stopped *408 the operation and gave directions to avoid contact. However, on cross-examination, the witness admitted that he was not thinking of potential danger therefrom, but of preventing entanglement with the wire and obstructing the installation. Besides he did not even know whether Stringer heard what was said.
Appellant contends here that its motion to exclude and its request for a directed verdict in the court below should have been sustained for two reasons: (1) a judgment may not rest on speculation, surmise or conjecture; and (2) the evidence failed to show that appellant was guilty of any negligence which had a substantial causal connection with the death complained of.
As to the first proposition, appellant suggests that, since there was no eyewitness, the manner in which Stringer met his death is completely unknown. It suggests as possibilities that he may have been withdrawing the pipe from the well, or replacing the pipe in the well, or carrying the pipe and tripping so that it struck the wire, or that he may have been trying to make a connection with the high voltage line and the electric motor.
In 38 Am. Jur., Negligence, par. 333, page 1032, it is said: (Hn 1) "The law does not require every fact and circumstance which make up a case of negligence to be proved by direct and positive evidence or by the testimony of eyewitnesses. Proof of the fact of negligence may rest entirely in circumstances; in other words, circumstantial evidence alone may authorize a finding of negligence. Hence negligence may be inferred from all the facts and attendant circumstances in the case, and where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference from established facts, a prima facie case is made." And in par. 334, page 1033, of the same volume, it is said: "In accord with the rule governing proof of negligence generally, proximate cause need not be established by the testimony of eyewitnesses, nor by direct or positive evidence, but may be proved by circumstantial *409 evidence; it may be determined from the circumstances of the case." See also Anderson v. Asphalt Distributing Co., Mo. Sup., 55 S.W. (2d) 688, 86 A.L.R. 1033. See also Palmer v. Clarksdale Hospital, 206 Miss. 680, 40 So. (2d) 582, where this Court cited with approval 38 Ar. Jur., par. 333, supra.
It must be remembered that on Wednesday before his death was discovered on Sunday, Stringer installed a pump in the well. He had trouble with the pump, could get no water, and sent word early Thursday morning to McAlpin and requested him to take the pump out. When the death was discovered, the pump had been taken out. Stringer's remains were lying near the well and pipe. He had been electrocuted. Signs on the wire and pipe indicated contact between them. The power line was 25 feet above the ground. The aggregate length of the pipe and point was 26 feet. When removed on the well bench, it would extend about 28 feet into the air. If the pipe was raised in a perpendicular position from the well, the top part was within six feet of the power line. The marks on the pipe were one to two feet from the top. An ordinary fire, such as the burning of the bench and well curb, could not have burned Stringer to such a marked extent.
From the foregoing facts, the reasonable and compelling conclusion is that Stringer was removing the pump from the well and, in doing so, the pipe made contact with the high voltage wire and as a result thereof, he was electrocuted. The legal effect would be the same if any one of appellant's first three suggestions is adopted. As to the fourth, it is unthinkable that he was trying to make a connection with the power line. There was neither proof nor suggestion that a ladder had been used on the ground; and it is unreasonable that Stringer climbed the pipe, and, in such a precarious situation, attempted to make a connection to the wire, 25 feet off of the ground.
*410 The proof was ample to show the manner and cause of death.
As to the second proposition, the question of reasonable foreseeability comes into play. (Hn 2) A fair statement of the rule as regards liability of power companies in the erection and maintenance of their wires is stated in 18 Am. Jur., Electricity, par. 53, pages 448-9, to wit: "* * * they are bound to anticipate only such combinations of circumstances and accidents and injuries therefrom as they may reasonably forecast as likely to happen, taking into account their own past experience and the experience and practice of others in similar situations, together with what is inherently probable from the condition of their appliances as they relate to the conduct of their business." (Emphasis supplied.)
(Hn 3) When it is known that a large majority of appellant's patrons install pumps in their wells; that the depth of wells in that area is greater than 20 feet; that pipes for such pumps come in standard lengths of 21 feet; that, after installation, pumps get out of order and must be repaired, and to that end, must be pulled out of the well; that it does not require the service of experts, but patrons themselves remove such pipes; that in installing and removing such pumps from the wells, the pipe is likely to extend 25 or more feet into the air  under such circumstances, should the appellant, at the time of constructing its power line almost directly over this particular well, have reasonably foreseen that Stringer would do necessary work in and about his well, which would expose him to danger from its line, if it was only 25 feet above the ground?
Electricity is a highly dangerous agency, and it must be denominated negligence to erect so close to the well a high voltage line, unless insulated, or unless, in the exercise of the highest degree of care, it was strung high enough off of the ground reasonably to prevent injury to him.
*411 Appellant cites a number of cases. We make particular reference to Roberts v. Mississippi Power & Light Co., 193 Miss. 627, 10 So. (2d) 542, Webb v. Louisiana Power & Light Co., La. App., 199 So. 451, and Arkansas Power & Light Co. v. Prince, 215 Ark. 182, 219 S.W. (2d) 766.
In the Roberts case, supra [193 Miss. 627, 10 So. (2d) 543], he, with three other employees, was working in a cultivated field, almost but not exactly beneath an uninsulated power line of high voltage. The wire was 13 1/2 feet from the ground. They were using a metal auger built of sections of about 3 feet in length. The hole had been bored about 14 or 15 feet deep. They did not remove the auger by sections, but let it extend the full length, and it fell on the wire, thereby resulting in Roberts' electrocution. Roberts was a mere licensee. In its opinion, the court observed that "time, place and circumstances must be taken into account" and that the power company was "in duty bound to use requisite care to see that its wires should not come in contact with and damage any person * * * reasonably likely to be exposed thereto along its right of way." On account of the unusual use of the premises and Roberts' status as a licensee, it was held that the power company could not have foreseen as a reasonable probability that he would be engaged in some activity which would place him in contact with the wire.
In the Webb case, supra, a 30 foot iron pipe made up of 8 foot sections, was being drawn out of the well without being disconnected. The court based its denial of liability on the ground that the power company could not reasonably anticipate that the operation would be done in that manner, but, on the other hand, it would be expected that the pipe would have been disassembled, joint by joint.
The Prince case, supra, is authority for appellant's position; but, lacking, as it does, the background of proven probabilities such as exist here, it loses much of its persuasive effect.
*412 In this case, Stringer was not a mere licensee. He was at his home. It should be repeated that "time, place and circumstances must be taken into account". Besides, the pipe could not have been disassembled. The joint was 21 feet long. A 5 foot point was attached to it. Moreover, the evidence showed that the point could not be taken off until the pipe had been pulled 2 or 3 feet above the well bench. Since the bench was 2 to 2 1/2 feet high, the pipe could still come in contact with the wire in removing the pump from the well. Disassembling would not have prevented the injury, as it would have done in the auger and iron pipe in the Roberts and Webb cases, supra.
We think the case of Fairbairn v. American River Elec. Co., 179 Cal. 157, 175 P. 637, a California case, is more nearly in point with the facts here. The principal point there was whether the evidence showed a use upon farms in the locality in which the wires of the power company were strung and the accident happened of derricks exceeding in height the height of the wires. In that case, the wire was at a height of 27 feet 8 3/4 inches and the hay stacking derrick which came in contact with it, was 30 feet 4 inches. It was shown that there were a number of such derricks in that area, and that it was not an infrequent or uncommon occurrence to move such derricks along the roads. The court held that it was the duty of the power company to have ascertained such fact before stringing its wires, and it therefore upheld the right to recover for damages by reason of contact between the wire and the derrick.
In Green River Rural Elec. Corp. v. Blandford, 306 Ky. 125, 206 S.W. (2d) 475, 477, Blandford, with another, was engaged in taking a 30 foot pipe out of a well to replace the check valve. The power line was 27 1/2 feet above the ground. The pipe came in contact with the line or with a charged branch of a tree. The court observed that it was negligence to maintain such a highly dangerous line touching or within 18 inches of the branches of a tree in a man's yard over his well. It said:
*413 "The defendant knew of the well and had recently run a new line for the installation of the electric pump. It is not to be exonerated from liability on the assumption no one would ever touch the branches of the tree or the wire itself, which was suspended so low immediately over the well."
In Cumberland Tel. & Tel. Co. v. Woodham, 99 Miss. 318, 54 So. 890, 891, with reference to proximate cause, this court said: "* * * the negligent act of a person, resulting in injury, is the proximate cause thereof, and creates liability therefor, when the act is of such character that, by the usual course of events, some injury, not necessarily the particular injury, or injury received in the particular manner complained of, would result therefrom, provided the attendant circumstances are such that an ordinarily prudent man ought reasonably to have anticipated that some injury would probably result from the act done."
See also Whitescarver v. Mississippi Power & Light Co., D.C., 5 F. Supp. 948, and Mississippi Power & Light Co. v. Whitescarver, 5 Cir., 68 F. (2d) 928.
We think the evidence was sufficient to make an issue for the jury, and that the trial court was correct both in overruling the motion to exclude and in refusing the requested peremptory.
Appellant also contends here that Mrs. Stringer survived her husband; that she was the beneficiary of the cause of action for her husband's death; and that upon her death such cause of action was extinguished.
This contention is made because of the fact that Mrs. Belton Stringer, who lived about a quarter of a mile away, testified that, on the particular Thursday afternoon, she heard a racket at the Stringer's place, then saw a fire and saw Mrs. Stringer between the house and the fire, walking rapidly toward the fire. Appellant contends that the reasonable inference therefrom is that Mr. Stringer, at that time, had already come in contact *414 with the wire, and must have died before Mrs. Stringer did.
Section 4, Chapter 230, Laws of 1948, provides in part: "That if the defendant desire to prove by way of defense in an action, any affirmative matter in avoidance, which by law may have been proved heretofore under special plea he shall set forth in his answer to the action such affirmative matter and incorporate such defense therein, otherwise such matter shall not be allowed to be proved at the trial; and said answer shall fully set forth any special matter which the defendant intends to give in evidence in bar of the action * * *."
Paragraph 7 of the declaration is as follows: "Plaintiff would further show that he is the legal administrator of the estate of the said E.J. Stringer, deceased, and has been authorized to bring said suit for the benefit of the heirs of the said E.J. Stringer, deceased."
Appellant's answer to paragraph 7 of the declaration is as follows: "7. Defendant admits paragraph 7 of the declaration."
Under Section 1453, Code of 1942, the action for the death of Stringer could be brought either "in the name of the personal representative of the deceased person, for the benefit of all persons entitled under the law to recover" or by Mrs. Stringer, if she was his survivor. (Hn 4) Our cases recognize no distinction in the right to sue as between the personal representative and the survivors. The one who first brings the suit has the right to prosecute and maintain it to a conclusion. J.J. Newman Lbr. Co. v. Scipp, 128 Miss. 322, 91 So. 11; Mississippi Power & Light Co. v. Smith, 169 Miss. 447, 153 So. 376. (Hn 4) Our statute vests the right of action in the survivors, to be asserted by the personal representative for the benefit of all persons entitled to recover, or by such survivors, and the cause of action is not abated by the death of such survivors. Compare 25 C.J.S., Death, Sec. 40, pp. 1133-1134.
*415 (Hn 6) The pleadings made no issue as to survivorship. The answer expressly admitted that the plaintiff was the legal administrator of Stringer's estate and that he had been authorized to bring the suit. Therefore appellant's contention in this regard must fall.
Appellant contends further that the amount of damages should have been limited to the pecuniary loss to Mrs. Stringer, accruing to her between the time of his and her deaths. To this end, it sought the following instructions:
"The court charges the jury that if you believe from a preponderance of the evidence in this case that Mrs. Stringer, the wife, lived longer than did Mr. Stringer; that is that Mr. Stringer, the husband, died first, then even if you do find for the plaintiff, the amount of your verdict shall be for nominal damages only and or for such amount only as would compensate the wife for the loss of the companionship of her husband during the period of time the wife survived the husband."
"The court charges the jury that if you believe from preponderance of the evidence in this case that Mrs. Stringer, the wife, lived longer than did Mr. Stringer; that is that Mr. Stringer the husband, died first, then even if you do find for the plaintiff the amount of your verdict shall be for such amount only as would compensate the wife for the loss of the companionship of her husband during the period of time the wife survived the husband."
The damnum clause, paragraph 8 of the declaration, made the following allegation: "Plaintiff would further show that as a result of the negligence of the defendant corporation as aforesaid the estate of the said E.J. Stringer and his heirs has been damaged in the sum of Twenty-Five Thousand ($25,000.00) Dollars for actual damages, including funeral expenses, and Twenty-Five Thousand ($25,000) Dollars * * *."
(Hn 7) The answer thereto did not set up the question of survivorship. It did not aver that the damages were nominal or that they were only for the pecuniary loss and *416 loss of companionship to Mrs. Stringer, as the survivor, for a brief period of time. No affirmative defense whatever was interposed thereto. On the contrary, the answer merely said: "Defendant denies paragraph 8 of the declaration." If such issue had been raised, the burden would have fallen on appellant. Daniels v. Bush, Miss., 50 So. (2d) 563.
Lawsuits must have issues. Those issues must be made by the pleadings. Proof must conform to the issues made by such pleadings. Otherwise lawyers, trying a case, will be like mariners, without any form of compass, sailing an uncharted sea.
The instructions were properly refused.
(Hn 8) Appellant also contends that the amount of the verdict is excessive.
Section 1453, Code of 1942, provides in part: "In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit."
In Cumberland Tel. & Tel. Co. v. Anderson, 89 Miss. 732, 41 So. 263, this court enumerated four elements of damage properly recoverable in death actions, one of which was "whatever sum the son might have recovered as the present value of his own expectancy." The measure of damages there laid down was referred to and cited in the recent case of Gordon v. Lee, 208 Miss. 21, 43 So. (2d) 665.
It was admitted that the decedent had a life expectancy of thirty years and eight months. There was no proof either as to earning capacity or pain and suffering. Evidence by the plaintiff, without objection, showed that the decedent had eight brothers and sisters and that the companionship between him and them was close and fine. Such evidence has considerable probative value if Mrs. Stringer was not the survivor, and if simultaneous deaths are assumed. As we have already said, the question *417 of survivorship is not involved here. We are unable to say that the sum awarded by the jury is so large as to evince passion or prejudice.
We find no reversible error in the record; and the judgment of the lower court is affirmed.
Affirmed.
McGehee, C.J., and Hall, Arrington and Ethridge, JJ., concur.
McGehee, C.J.
On this suggestion of error the appellant does not reargue the question of whether or not it was guilty of negligence in connection with the death of the decedent, E.J. Stringer, but addresses the argument to the question (1) of whether or not this Court erred in holding that since the answer of the appellant, as defendant in the trial court, did not plead as an affirmative defense that *420 Mrs. Stringer, who came to her death on the same occasion, survived her husband, no issue of survivorship was presented, even though evidence on that point was admitted without any objection on the part of the appellee, as plaintiff; and (2) whether or not this Court erred in not holding that the question of whether or not Mrs. Stringer survived her husband for only a few moments is controlling on the question of damages and that the proof of her survivorship merely tended to reduce the damages and was not an affirmative defense which had to be specially pleaded.
At the conclusion of the evidence offered by the plaintiff, the defendant requested a directed verdict in its favor, setting forth six specific grounds therefor, and all of which were directed to the alleged insufficiency of the proof to show that the defendant was guilty of any negligence which proximately caused, or contributed to, the death of the decedent, E.J. Stringer.
The question of whether or not Mrs. Stringer survived him was not set up as an affirmative defense to defeat any liability for damages, that is to say in bar of the alleged cause of action, although the defendant introduced some testimony, without objection on the part of the plaintiff, which tended to show that Mrs. Stringer had survived her husband. The question of her survivorship was called to the attention of the trial court in two refused instructions to the jury which would have informed the jurors that in the event they should believe from a preponderance of the evidence that Mrs. Stringer survived her husband, the amount of the verdict, if any, should be for nominal damages only, or in such amount as would compensate for the loss of the companionship of her husband during the brief period of time that she survived him.
(Hn 1) Even though the proof of the survivorship of the wife would have been competent for the purpose in connection with which it was introduced, that is to *421 say as tending to reduce the amount of the actual damages, the Court is still of the opinion that the two instructions referred to were properly refused since under Section 1453, Code of 1942, either the administrator of E.J. Stringer, deceased, or his wife, Mrs. Stringer, would have been entitled to bring the suit if she survived him, the suit by the administrator being for the benefit of the person or persons entitled to the damages, and the recovery not being limited to nominal damages, since the statute provides for "such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit." See also New Deemer Mfg. Company v. Alexander, 122 Miss. 859, 85 So. 104, 107; and Gordon v. Lee, 208 Miss. 21, 33, 43 So. (2d) 665.
(Hn 2) Applying the measure of damages above stated, the Court is unable to say that the amount of the verdict in the sum of $15,000 is so grossly excessive as to justify the Court in ordering a remittitur, when considering as competent proof the fact that Mrs. Stringer may have survived her husband for a brief period. The suggestion of error is therefore overruled.
Overruled.
Hall, Lee, Arrington and Ethridge, JJ. concur.