287 So.2d 262 (1973)
Mrs. Ben J. THORNTON, Jr., et al.
v.
INSURANCE COMPANY OF NORTH AMERICA.
No. 47250.
Supreme Court of Mississippi.
December 17, 1973.
*263 Charles C. "Cliff" Finch, D. Briggs Smith, Jr., M. Collins Bailey, Batesville, for appellants.
Dunbar & Merkel, Clarksdale, for appellee.
SUGG, Justice:
This is an appeal from a decree of the Chancery Court of Coahoma County, Mississippi awarding complainant, Insurance Company of North America, a judgment for $2,989.45 against Mrs. Ben J. Thornton, Jr., defendant. The decree directed the defendants, Everett Youngblood and L.J. Youngblood, to pay the amount awarded complainant out of the indebtedness owed by them to the defendant.
On September 27, 1968 Ben J. Thornton, Jr. was killed in a collision between the 1966 Plymouth Valiant automobile owned and operated by decedent and a Farmall Tractor and cotton trailer operated by Harold Thacker for Everett Youngblood and L.J. Youngblood doing business as a partnership under the firm name of Youngblood Company.
Decedent was survived by his wife and minor daughter, Cynthia Renee Thornton, who filed a declaration under Section 1453 Miss.Code 1942 Annotated (Section 11-7-13 Mississippi Code 1972 Annotated) against Harold Thacker and the Youngbloods. Plaintiffs sued for the following damages: (1) physical pain and suffering of decedent; (2) loss of companionship *264 and society; (3) loss of future earnings of husband and father; (4) funeral and medical expenses of decedent; (5) punitive damages; and, (6) "for all other losses arising from the death of said Ben J. Thornton, Jr., deceased."
A consent judgment in the amount of $90,000 was entered on July 21, 1970 in favor of Mrs. Thornton and her daughter.
On July 21, 1970 Mrs. Thornton, acting as general guardian of the person and estate of Cynthia Renee Thornton, executed a release to Thacker and the Youngbloods in consideration of $45,000 cash for:
[A]ny and all claims, demands, judgments, expenses, medical claims, causes of action and from any matter or thing whatsoever accrued or hereafter to accrue as a consequence of and arising out of the aforesaid accident in connection with the injuries to and the death of Ben J. Thornton, Jr. and resulting damages to Cynthia Renee Thornton, a minor.
The release further provided:
It is specifically understood that this release shall apply to all known and unknown and anticipated and unanticipated injuries and damages resulting to said minor from the accident aforesaid.
The release recited that it was executed under authority of a decree of the Chancery Court of the First Judicial District of Panola County, Mississippi in Cause No. 6138 dated July 21, 1970.
On the same date Mrs. Thornton, individually and as general guardian of the person and estate of Cynthia Renee Thornton, executed a partial release of the judgment against Thacker and the Youngbloods. The partial release recited that Mrs. Thornton had been paid $45,000 as guardian of Cynthia Renee Thornton in full and complete satisfaction of that portion of the judgment distributable to said minor child; that Mrs. Thornton had been paid individually the sum of $30,000 in partial satisfaction of the portion of the judgment distributable to her; and, that Mrs. Thornton agreed to accept payment of the balance due her in three installments of $5,000 each, payable on December 15, 1971, 1972 and 1973, such deferred payments to be evidenced by promissory notes to be secured by a deed of trust to be executed by the Youngbloods.
At the time of the collision an automobile policy issued by INA (Insurance Company of North America) was in effect which insured decedent against liability for bodily injury and property damage within policy limits. The policy also afforded decedent medical payments, accidental death benefit and comprehensive coverage. Under the comprehensive coverage provided by the policy, INA paid Mrs. Thornton the sum of $1500 which represented the value of the 1966 Phymouth Valiant automobile less $50 deductible. For this payment Mrs. Thornton executed a subrogation agreement in favor of INA for $1500. INA later paid Mrs. Thornton $1,000 representing death benefits due her as beneficiary and $614.45 under the medical coverage provisions of the policy for hospital, doctor and funeral expenses. Mrs. Thornton did not execute a subrogation agreement for the latter payments, but INA claims that it is subrogated to those payments because of the following policy provisions:
SUBROGATION (Bodily Injury and Property Damage Liability, Comprehensive and Collision Coverages)
In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.
INA filed a non-resident attachment in chancery against Mrs. Thornton for recovery *265 of $2,989.45[1] on the theory that it was subrogated to the extent of the payments made to her under the policy. The Youngbloods were joined as resident defendants because they were indebted to Mrs. Thornton in the amount of $15,000. INA alleged that Mrs. Thornton breached the subrogation agreement and the subrogation provisions of the policy when she consented to a judgment for $90,000 against the Youngbloods, thus precluding INA from collecting the subrogated claims.
The first question for decision is, what damages did the consent judgment for $90,000 include?
The consent judgment was based on a suit by a surviving widow and minor child for damages for the death of the husband and father. The damages recoverable under such a suit filed under Miss. Code Ann. § 11-7-13 (1972) are twofold; first, all damages of every kind to the decedent, and, second, all damages of every kind to the parties interested in the suit.
In a suit under the wrongful death act we have held that the damages to the decedent that may be recovered are punitive damages and damages for pain and suffering. See Illinois Central R. Co. v. Fuller, 106 Miss. 65, 63 So.2d 265 (1913) and New Deemer Manufacturing Co. v. Alexander, 122 Miss. 859, 85 So. 104 (1920).
We held in Scott v. K-B Photo Service, Inc., 260 So.2d 842 (Miss. 1972) that the damages that might be recovered by the parties interested in the suit are damages "that his heirs might have suffered because, of their personal relationship with the deceased, such as support and loss of companionship." (260 So.2d at 844).
Scott also held that funeral expenses, cost of tombstone and costs of administration of the estate of a decedent are a charge on the estate of the decedent and funds other than those derived from a suit by a widow for the benefit of herself and surviving children under the wrongful death statute must be looked to for payment thereof.
We therefore hold that the items of damages recoverable by Mrs. Thornton and her daughter under their declaration were pain and suffering of decedent, punitive damages and loss of companionship and support, and were not subject to any debts or liabilities of the deceased.
The rule announced in Scott, supra, and followed herein, modifies the holding of this Court in four cases: Southern Pine Electric Power Assn. v. Denson, 214 Miss. 397, 57 So.2d 859, 59 So.2d 75 (1952); Mississippi Power & Light Co. v. Smith, 169 Miss. 447, 153 So. 376 (1934); Hardwood Co. v. Cinquimani, 137 Miss. 72, 102 So. 470 (1924) and J.J. Newman Lmbr. Co. v. Scipp, 128 Miss. 322, 91 So. 11 (1922).
In Hardwood Co., supra, the Court considered the amendment of our wrongful death statute by Chapter 214 of the Laws of 1914 which authorized a personal representative to maintain suit under the wrongful death statute. The Court noted that, before the amendment, two suits were necessary in order to recover all damages to the decedent and damages to all parties entitled to distribution, one by the personal representative for damages to the decedent, and one by the kindred who had sustained loss. In the other three cases the Court held that the first suit filed, either by the personal representative or one of the kindred, was the suit that should be tried because the rule "first in time, first in right" applies. In Mississippi Power & Light Co. the Court noted that the distribution of the proceeds of the judgment was controlled by Miss. Code Ann. § 11-7-13 (1972).
The rights of parties in suits filed under our wrongful death statute are next considered.
*266 1. If the deceased is survived by wife, husband, child, father, mother, sister or brother and suit is brought by one of such persons, there can only be one suit for the benefit of all entitled to share in the distribution. The damages recoverable in such suit are punitive damages, pain and suffering of the deceased and damages "that his heirs might have suffered because of their personal relationship with the deceased, such as support and loss of companionship." (260 So.2d at 844).
We are not unmindful of the provisions that only one suit may be filed under the statute. In its earlier form the personal representative was not authorized to maintain an action under the wrongful death statute. Originally, the provision for one suit under the statute was intended to prevent each person entitled to distribution from filing a separate suit, so that only one suit would be filed for all entitled to distribution. After the statute was amended authorizing the personal representative to maintain an action for the benefit of all entitled to recover, the language with reference to one suit was not changed.
We must consider it in pari materia with Miss. Code Ann. §§ 91-7-231 and 91-7-233 (1972) which authorizes only a personal representative to sue to recover the assets of the deceased. This statute does not authorize the heirs of a deceased to file suit for the assets of his estate; therefore, a suit filed by an heir for hospital, medical or funeral expenses, or for damages to the property of a deceased would be a suit to recover assets of the estate. Since the wrongful death statute specifically authorizes suit by persons listed therein, and since this right existed in them exclusively from 1848 until the amendment of 1914 authorizing suit by the personal representative, the right of such persons to bring a suit, must be preserved.
This can be accomplished by authorizing such persons to bring suit only for the damages they are entitled to recover which are "not subject to payment of the debts or liabilities of the deceased," and a separate suit by the personal representative of the deceased for elements of damages that are assets of the estate.
This is consistent with our holding in Byars v. Austin, 218 So.2d 11 (Miss. 1969) where we stated:
Mississippi Code 1942 Annotated section 1453 (1956), sometimes called the "wrongful death statute," is our version of the Lord Campbell's Act, passed in England in 1846... .
It has been said that there are two lines of authority on the theory upon which the Lord Campbell's Act or statutes written in accord therewith are based. They are the survival theory and the new cause of action theory. The authorities under the survival theory hold that the wrongful death act creates no new cause of action, but is simply a continuation of right to sue which the deceased had until his death... .
......
In Mississippi we have adhered to the second theory that the "wrongful death statute" creates an entirely new cause of action for the benefit of the persons named in the act, and is not a part of the estate of the deceased intestate.
......

It is clear, at least in this state, that a cause of action by the administrator of an estate for the assets of an estate, and a suit in the name of the administrator for the use and benefit of the widow and persons named in the "wrongful death statute" are distinct causes of action and are unrelated although they grow out of the results of the wrongful death of the decedent. (218 So.2d at 15, 16). (Emphasis supplied).
2. If the deceased is survived by wife, husband, child, father, mother, sister or brother and suit is brought by the personal representative of the deceased, all damages may be recovered in such suit; *267 however the declaration should be in two counts with reference to the damages sought. One count should seek damages recoverable by the survivors listed in the statute, while the other count should seek damages recoverable by the personal representative as assets of the estate such as damage to real or personal property, funeral expenses and medical expenses. The verdict of the jury should be responsive to each of the counts.
The requirement that the declaration be in two counts is necessary to give effect to that part of the statute which provides:
Damages recovered under the provisions of this section shall not be subject to the payment of the debts or liabilities of the deceased except as hereinafter provided... .
The statute then provides that damages recovered thereunder are subject to the debts and liabilities of the deceased only when the deceased is not survived by husband, wife, child, father, mother, brother or sister.
A suit by the personal representative of the deceased should include damages that would be assets of the estate as well as damages to the persons listed in the statute who take their damages free from the debts and liabilities of the deceased. In such cases damages should be found separately so that it could be known with certainty the amount awarded the personal representative as assets of the estate recoverable by him subject to debts and liabilities of the deceased, and the amount awarded the persons listed in the statute who take free from the debts and liabilities of the deceased. Likewise if a settlement of the suit is effected, such settlement should reflect the division of damages between the personal representative and those entitled to distribution free of the debts and liabilities of the deceased.
3. If the deceased is not survived by husband, wife, child, mother, father, brother or sister, suit should be brought by the personal representative for all damages recoverable under the statute. Any sum recovered in such suit is, by the terms of the statute, subject to the debts and liabilities of the deceased. Any balance remaining is subject to general distribution.[2]
We next deal with the contention of INA that the release executed by Mrs. Thornton precluded it from recovering from the tort feasors its subrogated claims, and as a result made her liable for the amount thereof.
The subrogation agreement executed by Mrs. Thornton included only the $1500 paid her for the value of the automobile of her husband damaged in the collision in which he lost his life. In General Motors Acceptance Corporation v. New Orleans & G.N.R.R. Co. et al, 156 Miss. 122, 125 So. 541 (1930) the surviving widow executed a release to the railroad company for all damages in connection with the death of her husband. At the time of the collision her husband was riding in an automobile owned by him which was destroyed in the accident in which the decedent lost his life. Decedent owed General Motors Corporation for the balance due on the purchase price of the automobile and on appeal this Court held that the release executed by the widow did not cover the damage to the personal property of the decedent.
In Lloyds Ins. Co. v. Vicksburg Traction Company, 106 Miss. 244, 63 So. 455 (1913) an insurance company insured an automobile under a policy providing for subrogation. It was struck and injured by a streetcar with the owner being personally injured at the same time. The insurance company paid the owner for the automobile and took an assignment from him for his rights for damages to the car. The owner *268 recovered judgment for his injuries and the court held that this judgment did not preclude a subsequent suit by the insurance company because two causes of action arose out of the accident. The court stated:
Appellant had an equitable interest in the automobile at the time of the collision by reason of having written the policy of insurance. When it was damaged, then, by virtue of the contract of insurance and the article of subrogation, appellant had such an interest in the claim for damages. This interest became a right to sue at law when appellant paid to Mr. O'Neil the amount owing him for loss under the policy and received from him assignment of his claim and was subrogated to his right to recover for damages. Therefore, when the suit was filed by Mr. O'Neil on December 16, 1909, against appellee, the cause of action for recovery for injuries sustained to his person was in Mr. O'Neil, and the cause of action to recover for damages to the automobile was in appellant. There was then two distinct causes of action, two separate rights to recover, in two different persons. (106 Miss. at 251, 63 So. at 456).
Under General Motors Corporation, supra, Mrs. Thornton is not liable to INA for the $1500 paid her for damage to her husband's automobile. Since INA's policy provided for subrogation, under Lloyds Ins. Co., supra, it, rather than Mrs. Thornton, had a cause of action for the amount paid for damage to the automobile.
As heretofore stated Mrs. Thornton signed a document entitled Partial Release of Judgment and Statement of Agreement which merely satisfied the judgment entered against the defendants in the suit filed by her and her daughter. Since we have held that the medical, hospital and funeral expenses were not included in the consent judgment, this partial release did not destroy the subrogation rights of INA, if any, as to these items.
The $1,000 paid Mrs. Thornton for death benefits under the policy was for the accidental death of her husband and belonged to her individually as beneficiary. No subrogation right to this accidental death benefit exists in INA.
INA next contends that Mrs. Thornton refused to qualify as administratrix of her husband's estate upon request and thereby defeated its right to recover on the items covered by the subrogation agreement and the subrogation provisions of the policy.
Miss. Code Ann. § 91-7-63 (1972) provides that if a person entitled to letters of administration does not apply within 30 days from the death of an intestate, the court may grant administration to a creditor or to any other suitable person. Miss. Code Ann. § 91-7-61 (1972) provides that an administrator may be appointed solely for the purpose of conducting suits. Under these sections INA had the right to apply for and receive letters of administration to conduct whatever suits it deemed necessary to enforce its rights. Mrs. Thornton's failure to qualify as administratrix did not adversely affect the rights of INA.
For the reasons stated, we hold that INA was not entitled to recover from Mrs. Thornton and its suit against her is hereby dismissed with prejudice.
Reversed and rendered.
GILLESPIE, C.J., and PATTERSON, INZER and WALKER, JJ., concur.
NOTES
[1] The total amount paid Mrs. Thornton by INA was $3,114.45. It is not explained in the record why suit was brought for $2,989.45 instead of $3,114.45.
[2] For a discussion of distribution under the statute see Smith v. Garrett, Miss., 287 So.2d 258, decided December 17, 1973.