63 So.2d 264 (1953)
SHAW et ux.
v.
DEL-MAR CABINET CO., Inc. et al.
Supreme Court of Florida, en Banc.
February 6, 1953.
Rehearing Denied March 9, 1953.
*265 Schonfeld, Greenberg & Heller, Miami Beach, for appellants.
Miller & Podell, Miami Beach, for Del-Mar Cabinet Co., Inc., and Weitzman & Ravitz.
Durant & Durant, Miami, for Bond Millworks, Inc.
Pace, Sigman & Gilbert, Miami Beach, for Walton Flooring Co. and John N. Kohnen & Co.
DREW, Justice.
This is an appeal from a final decree, adverse to the owners, in a proceeding instituted by the owners against certain subcontractors and materialmen under the provisions of Section 84.23(4), Florida Statutes 1951, F.S.A.
On December 15, 1950, appellants, Murray A. Shaw and his wife Lillian H. Shaw, as owners, entered into a contract with Allied Construction Company, as general contractor, to erect certain buildings for a contract price of $50,000. The contract provided for progress payments. Such progress payments were made by the owners to the general contractor from time to time as the work progressed. It is admitted that all such progress payments were "properly made" under Section 84.05, Florida Statutes 1951, F.S.A.
The buildings were completed on April 7, 1951.
On April 13, 1951 the owners made the final payment to the general contractor of $10,025, as was agreed to be made under Article 5 of the contract, the first sentence of which is:
"Final payment shall be due ten days after substantial completion of the work provided the work be then fully completed and the contract fully performed."
It was not until April 18, 1951, five days after final payment was made, that the general contractor furnished the owners a general release. This general release was in the usual form and did not refer in any manner to the contract between the parties.
The owners did not demand nor did the general contractor furnish, either at or before the time final payment was made nor at any time subsequent thereto the statement under oath referred to in Section 84.04(3), Florida Statutes 1951, F.S.A.
Although no materialman or subcontractor had before or at any time during the progress of the work served upon the owners the cautionary notice provided for in Chapter 84, Florida Statutes 1951, F.S.A., the appellees here, subcontractors and materialmen, beginning on or about May 7, *266 1951 (within 90 days after completion of the contract) filed their respective notices of liens for services or materials incorporated in the building covered by the contract. The subcontractors and materialmen contend their liens are valid to the extent of the amount of the final payment of $10,025. The lower court agreed with the subcontractors and entered an appropriate decree. We are asked to reverse that decree.
We have been materially aided in the preparation of this opinion and in our study and analysis of the Mechanics' Lien Law, Chapter 84, Florida Statutes 1951, F.S.A., by the excellent article thereon by George O. Pringle, Esq., which appears in Volume I, page 423 of the Florida Law Review.
From what we have related above, it is apparent that the sole question we have to decide is whether money paid by the owner to the general contractor as a final payment on a contract for improvements on real property is "properly made", under Section 84.05, Florida Statutes 1951, F.S.A., if paid without first securing from the contractor the sworn statement referred to in Section 84.04(3), Florida Statutes 1951, F.S.A. One of the appellees succinctly poses the question as follows:
"Where owner makes final payment to the General Contractor without previously demanding and obtaining from the said General Contractor a sworn statement or affidavit stating that all lienors had been paid in full or showing the name and amount due each lienor not paid, and where the materialmen and subcontractors who furnish labor, services or materials which were incorporated into the improvements on the subject real property served no cautionary notices upon the owner but did file for record their claims of lien and did cause copies of the same to be delivered to the owner subsequent to the date of the said final payment and within three months from the date of furnishing the last items of services and/or materials upon the subject real property, under the Mechanics' Lien Law of the State of Florida, do the said subcontractors and materialmen have valid liens to the extent of the aforementioned final payment?"
The pertinent portions of the Mechanics' Lien Law on the particular question under consideration are Sections 84.04(1) (b); subd. 8, 84.04(3), 84.05(5), 84.05(8), 84.05 (11) and 84.05(12), Florida Statutes 1951, F.S.A.
There is another Section of the Mechanics' Lien Law that, for the reasons hereinafter pointed out, has a bearing on the subject and that is Section 84.08, Florida Statutes 1951, F.S.A., which provides that "Any person who, with intent to defraud", furnishes the owner the sworn statement referred to in the above-mentioned Sections of the Mechanics' Lien Law, knowing, subject to certain limitations, that such statement is false, shall be guilty of perjury and, upon conviction thereof, shall be punished accordingly.
Mr. Pringle, in his article supra, appropriately points out, in speaking of the Mechanics' Lien Law:
"This law imposes on the owner of real property on which improvements are being made the duty of disbursing the money due on the direct contract with the contractor in such a way as to furnish the greatest possible amount of protection to laborers, materialmen and others who perform services or furnish materials for the improvement. Provisions are included, however, for the protection of the owner; and he can, by properly paying the money due on the direct contract, avoid having any mechanics' liens enforced against his property. * * *"
The appellees admit that because they failed to observe the requirements of the statutes with reference to cautionary notice they are not entitled to a lien on the owners' property except to the extent of the amount of $10,025, which was the final payment to the contractor. They do contend, however, that there was a corresponding duty on the owners to adhere to the requirements of the statute and that when they failed to require of the General Contractor the sworn statement required by the statutes before they made the final payment, *267 such payment was not "properly made" under the statute and that their liens were not affected thereby except to the extent above noted. With this contention we agree.
A careful study of the statute alone leads us to this conclusion. While the statute is somewhat complicated, it is dealing with a complicated subject. It was drafted with the idea in mind of affording adequate protection to the owner, laborers, the general contractor, subcontractors, materialmen and others contributing some tangible thing to the visible improvement of real property.
We have repeatedly held that mechanics' liens are pure creatures of the statute and that for a subcontractor or materialman to acquire one the statute must be strictly complied with. Curtiss-Bright Ranch Co. v. Selden Cypress Door Co., 91 Fla. 354, 107 So. 679, and the cases there referred to. There is a corresponding duty on the owner to comply with the statute in order to protect his property from liens. In the instant case the subcontractors and materialmen did not serve the cautionary notice and they are therefore relegated to a lien on the property only to the extent of the final payment due on the contract of $10,025. The owners, on the other hand, could have protected their property even against these liens had they required the sworn statement before they made the final payment, and had then made such in good faith and bona fide as the statute requires. Having failed to follow these simple requirements of the law, the owners must suffer the consequence thereof.
It has been argued to us that the only purpose of the provision relating to the sworn statement is to establish a condition precedent to the general contractor enforcing his lien, and that such requirement is not for the benefit of prospective lienors. With this argument we cannot agree.
While it is true that Section 84.04(3), supra, closes with a paragraph providing that the contractor shall have no lien or right of action thereon until such statement is furnished, all of the Sections of this law must be construed together and we must give force and meaning to Sections 84.05 (8), (11) and (12). To do so requires the construction we have placed on it.
There is another reason why this requirement of a sworn statement is for the benefit of the subcontractor or materialman as well as the owner. Section 84.08, supra, provides that the penalty of perjury shall attach to a false statement by the contractor (subject to the limitations mentioned therein). The subcontractor or materialman is entitled to the salutary effect of this statute on one who might be tempted to make a false statement. There is a vast difference in executing a general release to the owners with no criminal penalty attached and in executing a sworn statement of the type required by the Mechanics' Lien Law. We therefore hold that the sworn statement required by Section 84.04(3), supra, is for the protection of the subcontractors and materialman, as well as the owner, and that the owner may not waive it without subjecting the final payment to being "improperly made" under the statute.
The appellants strongly insist that the case of Southern Paint Mfg. Co., Inc. v. Crump, 132 Fla. 799, 182 So. 291, 292, is identical to this case and that to uphold the Chancellor below would in effect be an abrogation of the doctrine of stare decisis and "leave the state of the law in a great state of upheaval rendering decisions from the Supreme Court little more than nullities."
We must admit that the language contained in that opinion is susceptible to the construction placed on it by appellants. The holding of this Court, however, was merely that:
"There is no allegation in the bill of complaint that the complainant had complied with the conditions precedent to acquire a lien on the defendant's property. A materialman's lien is strictly statutory, and before any person may have such lien the statutory provisions must be strictly complied with, and before he can enforce such lien the claimant must allege and prove a strict compliance with every requirement of the statute. See Curtiss-Bright Ranch Co. v. Selden Cypress Door Co., 91 Fla. 354, 107 So. 679." (Emphasis supplied.)
*268 The factual situation in the above case was entirely different from the factual situation in the case now under consideration. It is also significant that the above case came here from an order dismissing a bill of complaint and the issue was mainly one of pleading. Nevertheless, there is enough said in the case of Southern Paint Mfg. Co. v. Crump, supra, to afford a basis for the assertion that it is authority for the position that after the work is completed on a building the owner may  if he does so in good faith and without notice of any pending claim by a subcontractor or materialman  pay the General Contractor the balance due on the contract without first securing the sworn statement required and that such payment would be "properly made". In order that there can be no question in the future about the matter, we hereby overrule the Southern Paint Mfg. Co., Inc., v. Crump, supra, to the extent that it conflicts with our holding here.
It is interesting to note that in Hardee v. Richardson, Fla., 47 So.2d 520, 524, there was a clear intimation that payment by the owner without securing the sworn statement would be payment at the owner's peril, when we said:
"It is intended, further, that the sworn statement to be given pursuant to section 84.04(3) should not be necessary to the acquisition of the lien but should operate to protect the owner against the possibility of paying more than once for the same item of labor or materials; the effect of the section being to afford to the owner the right, without being deemed in default, to withhold payments due on the general contract until proof has been given that subcontractors, materialmen and laborers have in fact been paid, or that specified amounts are due and owing such preferential lienors which the owner may lawfully pay out of the money due the general contractor. See Sec. 84.06, Florida Statutes, 1941, F.S.A."
In summarizing, we hold that final payment under a building contract made by the owner to the general contractor without first securing the sworn statement from the contractor as required by Section 84.04(3), Florida Statutes 1951, F.S.A., is not "properly made" as the term is defined in Section 84.05, Florida Statutes 1951, F.S.A.
Inasmuch as the question is not raised in this case, we do not pass upon what is meant by "final payment" in the Statute. In this case all parties admit that the amount in controversy was the "final payment" referred to in the Statute.
Affirmed.
HOBSON, C.J., and TERRELL, THOMAS, SEBRING and MATHEWS, JJ., concur.
ROBERTS, J., dissents.
ROBERTS, Justice (dissenting).
In the opinion of the writer, there is nothing in the Mechanics' Lien Law, Chapter 84, Florida Statutes, F.S.A., to require an owner to secure the affidavit provided for in Section 84.04(3), Florida Statutes, F.S.A., before making his final payment under a contract to the general contractor in order to insure that such final payment is "properly made."
Section 84.04(3) provides, in substance, that when final payment becomes due, the contractor shall give to the owner a statement under oath stating either that all lienors have been paid or listing those who have not been paid; and that "The contractor shall have no lien or right of action against the owner for labor or services performed or materials furnished under his contract while in default by reason of not giving the owner such statement under oath."
Section 84.05, Florida Statutes, F.S.A., provides in Subsection (1) thereof that "Any money paid by the owner on a direct contract and in accordance with this section, and only money so paid, shall be held to be `properly paid' as these words are used in § 84.02." (Emphasis is supplied.) In Subsection 8 of this same section, it is provided that "The owner may pay to the contractor any money then due and payable on the direct contract; provided, that there will remain of the contract price of said contract after payment of such money, and *269 after deducting all money previously properly paid by the owner on said contract, a sum sufficient to pay all amounts due or to become due (a) to laborers * * *, and (b) to all other lienors for all labor, services, or materials, previously or thereafter performed or furnished by such lienors and covered by said contract and by notices previously or thereafter given by such lienors in accordance with subsection one of § 84.04 or by notices previously given by such lienors in accordance with subsection two of § 84.04 or by a statement under oath of the contractor previously given in accordance with subsection three of § 84.04 and not covered by waivers of lien * * *."
The purpose of Section 84.04 is to provide the method by which subcontractors and the direct contractor may perfect their liens against the improved property. The purpose of Section 84.05 is to provide the method by which the owner may make "proper" payments under the direct contract. Section 84.04(3) has the additional effect of affording to the owner "the right, without being deemed in default, to withhold payments due on the general contract until proof has been given that subcontractors, materialmen and laborers have in fact been paid," Hardee v. Richardson, Fla., 47 So.2d 520, 524; but there is nothing in either section to indicate that the Legislature intended that a payment to the contractor, otherwise proper under Section 84.04(8), would be made at the risk of the owner unless the statement under oath mentioned in Section 84.04(3), supra, was first submitted to the owner by the general contractor.
It would have been an easy matter for the Legislature to require, as to the final payment, that such would not be deemed to be "properly paid" unless the owner first secured from the contractor a statement under oath as to the unpaid lienors, if any. This it did not do; and under the rule of statutory construction, "expressio unius est exclusio alterius," it is this writer's opinion that this court is not authorized to superimpose this additional requirement upon those expressly stated in Section 84.05(8), supra.
A subcontractor is provided full protection under our Mechanics' Lien Law for his claim for services or materials furnished. He may require the owner or contractor to furnish him with a copy of the contract and a statement of the amount due or to become due thereon, Section 84.25; he may secure his lien by filing a notice of claim thereof and giving notice to the owner, Section 84.04. A subcontractor is in the business of furnishing materials and labor and is in a much better position to know the requirements of the Mechanics' Lien Law than is the ordinary owner who may possibly enter into a building contract but one time in his life. Certainly, if the Legislature specifically directed the owner to obtain from the general contractor the statement under oath before making the final payment under the contract, under penalty of having such payment deemed not "properly paid," we should give effect to the expressed legislative intent; but, in the absence of such, it is this writer's opinion that a subcontractor who has not chosen to protect himself by filing his claim of lien prior to the time that final payment has become due and has been paid under the contract, cannot fairly complain because the owner is not required to pay over again to such subcontractor what he has already paid in good faith to the general contractor.
I would reverse the decree of the lower court.