370 So.2d 394 (1979)
CLIMATROL CORPORATION, a Florida Corporation, Appellant,
v.
Howard KENT and Shirley Kent, His Wife, Appellees.
No. 78-983.
District Court of Appeal of Florida, Third District.
April 10, 1979.
Rehearing Denied May 23, 1979.
Patton, Kanner, Segal, Zeller, King & Middelthon and Dennis G. King, Miami, for appellant.
Pallot, Poppell, Goodman & Slotnick and Arvin Peltz, Miami, for appellees.
Before BARKDULL, HUBBART and SCHWARTZ, JJ.
BARKDULL, Judge.
This is an appeal, brought by the plaintiff in the trial court, from an order denying its claim for a mechanic's lien pursuant to Chapter 713, Florida Statutes, and from an order assessing attorney's fees and costs against it pursuant to Section 713.29, Florida Statutes (1977).
Appellees, Howard and Shirley Kent, owners of a home in Hialeah, Florida, decided to follow the Florida trend and install a swimming pool at their residence. In pursuit of this purpose, they made arrangements with University Federal Savings & Loan Association for a home improvement loan, whereby funds would be disbursed by checks payable, jointly, to Howard and Shirley Kent and New Enterprises, Inc., the contractor for the improvements.
Appellant, Climatrol Corporation, entered into a contract with New Enterprises on June 16, 1977 to furnish a pool screen enclosure to the Kents' home for a contract price of $1,655.00. Climatrol commenced its portion of the job by leaving materials on the *395 site on June 27, 1977. The evidence is conflicting as to when the job was completed and the release of lien furnished by New Enterprises to the Kents; however, the release of lien is dated July 6, 1977 and the final payment check appears to have been endorsed July 7, 1977. Climatrol furnished its Notice to Owner, which was signed and receipted for on July 12, 1977. Climatrol filed a Claim of Lien on the Kents' property on July 22, 1977. Suit was commenced by Climatrol on the Claim of Lien, seeking foreclosure thereof.
By amendment to their answer, the defendants filed a copy and asserted the benefits of a Release of Lien[1] furnished to them by the general contractor.
The cause came on for final hearing before the court, who entered a final judgment denying the claim of lien and reserved jurisdiction to assess attorney's fees and costs. Subsequently, the court entered a supplemental judgment awarding defendants costs and reasonable attorney's fees pursuant to Section 713.29.
Appellant appeals from said judgments, contending that the trial court erred in holding the release of lien furnished by the contractor met the test of Section 713.06(3)(d)(1), Florida Statutes (1977).
It is difficult for a court to enforce the lien law against a homeowner who has made improper payments and may thus be required to pay twice for improvements to his property. However, the mechanic's lien law is generally construed in favor of the lienor, and the homeowner who takes the statutory precautions can protect himself from such a situation.
In the instant cause, the homeowner was acting as the final disbursing agent for the funds on the job and failed to file a Notice of Commencement, thereby rendering all payments improper pursuant to the express language of the Mechanic's Lien Statute. With respect to the obtaining of the release of lien, there is a ready and commonly known distinction between a release of lien and the contractor's final affidavit. The Mechanic's Lien Statute clearly and concisely sets forth the respective duties and liabilities of the various parties involved; the law is best served by requiring literal compliance with its terms.
The contractor's affidavit provision must be construed to require what it says, to wit: that the contractor be required to swear under oath that he has paid his subcontractors who may have liens on the project. The countervailing benefit is that the owner can rely on this affidavit and protect himself from subsequent notices of claims which may be filed within the 45-day period of Section 713.06(2), Florida Statutes (1977), "Notice to Owner", or within the 90-day period of Section 713.08(5), Florida Statutes (1977), "Claim of Lien".
*396 Section 713.35, Florida Statutes (1977) makes the furnishing of a false affidavit punishable as the crime of perjury. As is readily apparent, the contractor would not be guilty of perjury for executing the release of lien furnished to the homeowner in this instance, in that it does not recite that all lienors have been paid. In the case of Shaw v. Del-Mar Cabinet Co., 63 So.2d 264 (Fla. 1953), the Supreme Court of Florida distinguished between a Release, or a General Release, and the Contractor's Affidavit required by the statute. In the Shaw case, the court held that payment was improper where the affidavit was not obtained and that the materialmen could recover even though they filed no notices to owner at all. The court then discussed the difference between a General Release, or Release of Lien, and the Contractor's Affidavit, as follows:
.....
"... Section 84.08, supra, provides that the penalty of perjury shall attach to a false statement by the contractor (subject to the limitations mentioned therein). The subcontractor or materialman is entitled to the salutary effect of this statute on one who might be tempted to make a false statement. There is a vast difference in executing a general release to the owners with no criminal penalty attached and in executing a sworn statement of the type required by the Mechanics' Lien Law... ."
.....
63 So.2d 267.
The Supreme Court held, in Shaw v. Del-Mar, supra, that there is a duty on the owner to comply with the statute in order to protect his property from liens, and that the obtaining of a release was not compliance with the requirement of a contractor's affidavit designating that all lienors had been paid.
Appellant submits that this case is controlled by those principles of law recited in the case of Adams v. McDonald, 356 So.2d 864 (Fla. 1st DCA 1978).[2]
Therefore, with reluctance, the judgments under review will be reversed with instructions to render a foreclosure in favor of the original plaintiff, because we are not privileged to reverse previous decisions of the Supreme Court of Florida. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973); State v. Dwyer, 332 So.2d 333 (Fla. 1976); Reichold Chemicals, Inc. v. Omni-Vest, Inc., 352 So.2d 58 (Fla. 1st DCA 1977). However, we will certify this case to the Supreme Court of Florida as one involving a question of great public interest, in that it requires a home owner to meet the same strict requirements of the mechanic's lien law as one engaged in a commercial business. The modern trend has been to protect the homeowner/consumer in the purchase of his home. Gable v. Silver, 258 So.2d 11 (Fla. 4th DCA 1972); Simmons v. Owens, 363 So.2d 142 (Fla. 1st DCA 1978). If this be so in the purchase of a home, it should likewise apply when he improves his home.
A homeowner may improve his home once or twice in a lifetime, whereas a subcontractor (as in the instant case) is making supplies for such improvements on a regular basis in its commercial business. The supplier has the expertise in the mechanic's lien law because he deals with it daily; this is something the homeowner does not possess.
If I were authoring this opinion as a first impression in Florida, I would balance the interest to be protected under the mechanic's lien law in favor of the homeowner and require strict compliance by a contractor or materialman dealing with him. Whereas here the homeowner did all reasonable under the circumstances, and the subcontractor, but for the improper contractor's affidavit, would not have timely filed a notice to owner.[3] I would, if this was an initial *397 interpretation in Florida, hold in favor of the homeowner.
Therefore, because of the reasons above stated and following the previous decisions of the Supreme Court of Florida, the judgments under review be and the same are reversed and the matter returned to the trial court for the entry of a judgment in favor of the plaintiff, foreclosing the lien and awarding it reasonable attorney's fees.
Reversed and remanded, with directions.
NOTES
[1] OF LIEN
"KNOW ALL MEN BY THESE PRESENTS:
"That the undersigned, for and in consideration of the payment of the sum of Ten and 00/100 Dollars ($10.00) paid by the owner receipt of which is hereby acknowledged, hereby releases and quit claims to the said property its successors and assigns, and the owner, all liens, lien rights, claims or demands of any kind whatsoever, which the undersigned now has or might have against the building on premises legally described as
 HOWARD KENT
 7130 W. 12 LANE
 HIALEAH, FLA.
on account of labor performed and/or material furnished for the construction of any improvements thereon. That all labor and materials used by the undersigned in the erection of said improvements have been fully paid for.
"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 6 day of July, 1977.
 New Enterprises Inc. (SEAL)
 by Norman Weinberg
"STATE OF FLORIDA COUNTY OF DADE
"I hereby acknowledge that the statements contained in the foregoing Release of Lien are true and correct.
"Sworn to and subscribed before me this 29th day of June 1977.
 Marguerite Mero
 Notary Public State of Florida
 at Large
"My Commission expires: "Notary Public, State of Florida at large My Commission Expires March 5, 1979 Bonded by American Fire & C"
[2] This was not reported at the time of the rendition of the original judgment in the trial court.
[3] § 713.06(2)(a), Fla. Stat. (1977)

"... This notice must be served before commencing or not later than 45 days from commencing to furnish his services or materials but in any event before the date of furnishing the affidavit under subsection (3)(d)1., of this section, or abandonment, whichever shall occur first... ."